IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff(s),

v.

JOSEPH J. QUERI, JR., JAMES L. JEROME,
BRANDT A. ENGLAND, KYLE D.
KACZOWSKI, FRANKO J. MARRETTI,

        Defendant(s).

08cv1367
**ELECTRONICALLY FILED**

## **MEMORANDUM AND ORDER DENYING MOTION TO DISMISS**

The plaintiff in this case, the Securities and Exchange Commission ("SEC"), brought this action against a number of defendants alleging insider trading and seeking injunctive relief, disgorgement of profits obtained as result of the alleged insider trading, civil penalties, and other relief. The SEC's complaint sets out the following summary:

> 1. This is an insider trading case. Defendant Joseph J. Queri, Jr., the Senior Vice President of Real Estate at Dick's Sporting Goods, Inc., misappropriated material, nonpublic information from his company about its plans to acquire Galyan's Trading Company, Inc. On or about June 10, 2004, Queri Jr. tipped defendant Joseph J. Queri, Sr. about the acquisition. Queri Sr. then tipped his friends, defendants James L. Jerome, Kyle D. Kaczowski, Gino Ferraro, Felix Crisafulli and Thomas Heller, who all bought shares of Galyan's stock. Jerome, in turn, tipped defendant Brandt A. England, who also traded. Kaczowski tipped two friends, who traded. Ferraro tipped his son-in-law, defendant Franko J. Marretti, who traded and tipped a business colleague.

> 2. About one week later, on June 21, 2004, Dick's publicly announced its intention to acquire Galyan's for $16.75 per share in cash via a tender offer. The day after the announcement, Galyan's stock closed at $16.68, a 50% increase from the previous day's closing price of $11.10. Defendant Queri Sr.'s friends and their colleagues sold their shares of Galyan's stock after the public announcement, collectively profiting in the amount of $161,208.22. Defendant Ferraro then wrote a check to Queri Sr. for $2,600.

> 3. Defendants Queri Jr., Queri Sr., Jerome, England, Kaczowski, Ferraro, Marretti, Crisafulli and Heller, directly and indirectly, engaged in and, unless enjoined, will continue to engage in transactions, acts, practices, and courses of business which violate Sections 10(b) and 14(e) of the Securities and Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14e-3].
>
> 4. The Commission brings this action pursuant to Sections 21(d), 21(e) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78u-1] seeking a permanent injunction, disgorgement of trading profits, plus prejudgment interest, and civil penalties.

Complaint (doc. no. 1), ¶¶ 1-4.

Before the Court is defendant Brandt A. England's "Special Appearance of Defendant England and Motion to Dismiss Pursuant to Rule 12(b)(6), and for Lack of Personal Jurisdiction."[1] Although defendant England does not specify the rule of procedure he invokes in challenging personal jurisdiction, this aspect of his motion is construed as having been made pursuant to Fed.R.Civ.P. 12(b)(2). Defendant James Jerome has joined England's motion to dismiss for want of personal jurisdiction but not the Rule 12(b)(6) motion. See Order of January 22, 2009 (doc. no. 46) granting joinder.

All defendants, including Jerome and England, are alleged to be residents of Nevada, except for Joseph Queri, Jr. a resident of Pittsburgh, Pennsylvania, and Thomas Heller, a resident of California. As to England, the Complaint alleges that defendant Queri, Sr. tipped Jerome, who in turn tipped his friend, England. Specifically, the Complaint alleges:

> 42. As set forth more fully below, defendant Jerome also tipped his friend, defendant England. Jerome knew or should have known that he was passing on

---

[1] This motion was docketed at document 31, but the clerk's office terminated that motion "as motion was previously docketed with document 23." Text-only Order of December 17, 2008.

2

information that had been obtained in breach of a fiduciary duty.

### 2. Brandt England

43. England and Jerome are friends or business colleagues, who spoke to each other regularly by telephone during June 2004.

44. On Friday, June 11, 2004, after Jerome spoke to Queri Sr., Jerome spoke to England on the telephone three times. During those conversations or others, Jerome disclosed material, nonpublic information about the acquisition to England. England knew or should have known that the information had been provided in breach of a fiduciary duty.

45. 45. On Monday morning, June 14, England placed his first order to buy shares of Galyan's stock. England bought Galyan's stock each day from June 14 to June 17, for a total purchase price of $99,074.

46. England was an infrequent trader during the two years before his Galyan's purchases. He executed no stock transactions from July 2002 through December 2002, seven stock transactions in 2003 and three stock transactions from January 2004 through June 13, 2004. None of England's stock purchases during this period was larger than $15,000.

47. On June 22, England sold 8,353 of his 9,000 shares of Galyan's stock. On July 12, he sold the rest of his shares. England profited $51,158.20 from his Galyan's trading.

Complaint (doc. no. 1), ¶¶ 42-47, .

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6), the Court accepts the well-pleaded factual allegations of the complaint as true, and draws all reasonable inferences therefrom in favor of the plaintiff. *Armstrong Surgical Ctr., Inc. v. Armstrong County Mem'l Hosp.*, 185 F.3d 154, 155 (3d Cir. 1999). A claim should not be dismissed if the factual allegations raise a right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). See also *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (*Twombly* 's "plausibility" paradigm for evaluating the sufficiency of complaints is not restricted

to the antitrust context but is equally applicable in context of civil rights actions and Rule 12(b)(6) review in general), *cited with approval in Wilkerson v. New Media Tech. Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) ("Today, we extend our holding in *Phillips* to the employment discrimination context. The plausibility paradigm announced in *Twombly* applies with equal force to analyzing the adequacy of claims of employment discrimination."); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, (3d Cir. 2008) (*Twombly* paradigm applies in context of breach of contract, negligence, and equitable indemnification action against merchant and against affiliate of bank that processed credit card transactions).

As explained and clarified by the United States Court of Appeals for the Third Circuit in the *Phillips* case:

> In determining how *Twombly* has changed [the Rule 12(b)(6)] standard, we start with what *Twombly* expressly leaves intact. The Supreme Court reaffirmed that Fed.R.Civ.P. 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' " and that this standard does not require "detailed factual allegations." *Twombly*, 127 S.Ct. at 1964 (quoting *Conley* [*v. Gibson*, 355 U.S. 31, 47 (1957)]. The Supreme Court also reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. See *id*. at 1964-65, 1969 n. 8. The Supreme Court did not address the point about drawing reasonable inferences in favor of the plaintiff, but we do not read its decision to undermine that principle.
>
> . . . First, . . . [t]he Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 1965 n. 3. Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " *Id*. at 1966. The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n. 3.
>
> Second, the Supreme Court disavowed certain language that it had used

4

many times before -- the "no set of facts" language from *Conley*. See *id*. at 1968. It is clear that the "no set of facts" language may no longer be used as part of the Rule 12(b)(6) standard. As the Court instructed, "[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. We find that these two aspects of the decision are intended to apply to the Rule 12(b)(6) standard in general. . . .

. . . [T]he *Twombly* decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case-some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964. Indeed . . . , we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. . . . Put another way, in light of *Twombly*, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. See *Twombly*, 127 S.Ct. at 1965 n. 3.

. . . The second important concept we take from the *Twombly* opinion is the rejection of *Conley*'s "no set of facts" language. The *Conley* language was problematic because, for example, it could be viewed as requiring judges to speculate about undisclosed facts. . . . After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of [the proscribed] conduct." . . .

* * *

Thus, under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and showing that "the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964. It remains an acceptable statement of the standard, for example, that courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." . . .

*Phillips*, 515 F.3d at 231-234 (parallel and additional citations omitted). See also *Budinsky v.*

*Pennsylvania Dept. of Envt'l. Res.*, 819 F.2d 418, 421 (3d Cir. 1987) (in making this determination, the district court must construe the pleading in the light most favorable to the non-moving party) and *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (court will accept all factual allegations in complaint as true, but is not compelled to accept "unsupported conclusions and unwarranted inferences" or "a legal conclusion couched as a factual allegation").

Since the Federal Rules of Civil Procedure continue to require notice pleading, not fact pleading, to withstand a Rule 12(b)(6) motion, the plaintiff "need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004), *quoting Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules . . . to define facts and issues and to dispose of unmeritorious claims.").

On the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, once a defendant has raised a lack of personal jurisdiction defense, the burden shifts to the plaintiff to prove that jurisdiction exists in the forum. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). A court must construe all facts in the light most favorable to the plaintiff when determining whether personal jurisdiction exists. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Ordinarily, a plaintiff may not rest solely on the pleadings to satisfy its burden. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Rather, a plaintiff must demonstrate "with reasonable particularity" contacts between the defendant and the forum sufficient to support a prima facie case in favor of the exercise of personal jurisdiction by the

forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986); *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *Carteret Sav. Bank*, 954 F.2d at 146. Thus, a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings, *i.e.*, whether in personam jurisdiction actually lies." *Clark v. Matsushita Electric Indus. Co., Ltd.*, 811 F.Supp 1061, 1064 (MD. Pa. 1993), quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.3d 61, 66 n. 9 (3d Cir. 1984).

**Personal Jurisdiction.**

The SEC brings this suit under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which authorizes nationwide service of process. "When a violation of the Exchange Act is alleged in an action, the statutory provision governing jurisdiction under that Act, Section 27, comes into play . . . ." *Equitable Bank v. Finn*, 671 F.Supp. 374, 377 (D.Md. 1987). This statute provides, in pertinent part:

> [a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder . . . may be brought in any . . . district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (1994).

Under such nationwide service statutes, the relevant forum for evaluating the extent of a defendant's contacts is the United States as a whole, and any forum within the United States is an appropriate forum for the suit. In *Pinker v. Roche Holdings Ltd.*, the United States Court of Appeals for the Third Circuit explicitly held that where the plaintiff's claim is based on a federal statute authorizing nationwide service of process, such as Section 27 of the 1934 Securities Act,

15 U.S.C. § 78aa, the relevant forum for analyzing the extent of the defendant's contacts is the United States as a whole. The Court of Appeals stated in the *Pinker* case as follows:

> Where Congress has spoken by authorizing nationwide service of process, therefore, as it has in the Securities Act, the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits. . . . Following this reasoning, the district courts within this Circuit have repeatedly held that a "national contacts analysis" is appropriate "when appraising personal jurisdiction in a case arising under a federal statute that contains a nationwide service of process provision." . . . We too are persuaded by the reasoning of our prior opinions on the subject, and, consistent with several of our sister courts of appeals, hold that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process.

292 F.3d at 369 (numerous citations omitted). See also *High River Ltd. Partnership v. Mylan Laboratories, Inc.*, 353 F.Supp.2d 487 (M.D.Pa. 2005) (section 27 of Exchange Act authorizes nationwide service of process, and when "federal statute provides for national service of process, the extent of a defendant's contacts is analyzed in relation to the United States as a whole, not simply the forum state."); *S.E.C. v. Infinity Group Co.*, 27 F.Supp.2d 559 (E.D.Pa. 1998) (relevant inquiry is whether the defendant has had minimum contacts with the United States, rather than with any particular state, and there "is absolutely no doubt that Bailey, a Virginia resident, has minimum contacts with the United States.").

Thus, in assessing the sufficiency of a defendant's contacts with the forum, a court should look at the extent to which the defendant "availed himself of the privileges of American law and the extent to which he could reasonably anticipate being involved in litigation in the United States." *Id*. at 370, citing *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985). It cannot be seriously maintained that defendants Jerome and England did not avail themselves of the privileges of American law when they allegedly traded, on the basis of material nonpublic

information, in the securities of a United States corporation listed on a United States stock exchange.

Accordingly, this Court has personal jurisdiction over Defendants Jerome and England, and will deny the motion to dismiss for lack thereof.

**Failure to state a claim.**

An essential element of a section 10(b), Rule 10b-5 claim is scienter, a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). Defendant England's primary argument is that the SEC has failed to allege sufficient facts to support this element of its claim.

The United States Court of Appeals for the Third Circuit has defined "scienter" in the context of securities fraud as "a mental state embracing intent to deceive, manipulate or defraud, or, at a minimum, highly unreasonable (conduct), involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Alpharma Inc. Securities Litigation*, 372 F.3d 137, 148 (3d Cir. 2004), quoting *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 667 (3d Cir. 2002). Recklessness is sufficient to establish scienter. *In re Advanta Corp. Sec. Lit.*, 180 F.3d 525, 535 (3d Cir. 1999).

Fed.R.Civ.P. 9(b) provides that, in the context of pleading fraud, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Moreover, scienter may be proven by circumstantial evidence. *In re Advanta Corp. Sec. Lit.*, 180 F.3d at 534-35.

The Private Securities Litigation Reform Act of 1995 ("PLSRA") adds an additional requirement, providing that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). However, the heightened requirements for pleading scienter under the PSLRA do not apply to actions brought by the SEC. E.g., *S.E.C. v. Lucent Technologies, Inc.*, 363 F.Supp.2d 708, 716-17 (D.N.J. 2005) (the "parties appear to agree, however, and the case law supports the conclusion, that the heightened requirements for pleading scienter under the PSLRA do not apply to actions brought by the SEC"), citing *S.E.C. v. Prater*, 296 F.Supp.2d 210, 215 (D.Conn. 2003) ("Since actions brought by the SEC are not considered 'private litigation,' the standard imposed in the PSLRA for pleading scienter does not apply to the SEC." ).

If the Complaint in this case were subject to the private litigation heightened pleading standard for scienter, the determination of whether there were sufficient allegations to rise above the enhanced "speculative level" would perhaps present a closer question. But gauged with reference to Rule 9(a), the Court is satisfied that the SEC has met its burden at this preliminary stage of the proceedings.

Similarly with respect to the section 14(e), Rule 14e-3 claim, in light of the forgoing liberal pleading standards under Rule 12(b)(6), this Court simply cannot say, at this early pre-discovery stage of the proceedings, that the facts alleged in plaintiff's complaint do not rise above the speculative level or that they do not support the cause of action alleged. Contrary to defendant's assertions, the Complaint fairly alleges that Dick's acquisition of Galyan's was in fact a tender offer, and that defendant was aware of the non-public material nature of the

10

information he received allegedly from Jerome. Accordingly,

**AND NOW,** this 26th day of January, 2009**, IT IS HEREBY ORDERED** that defendant Brandt England's motion to dismiss (doc. no. 41), to the extent it asserts defendant's failure to state a claim, is **DENIED** without prejudice to defendant raising the issues set forth therein in a motion for summary judgment at the appropriate time following discovery. To the extent the motion to dismiss challenges personal jurisdiction, it is **DENIED** with prejudice.

<pre>
                                        s/ Arthur J. Schwab
                                        Arthur J. Schwab
                                        United States District Judge
</pre>

cc:     All ECF registered counsel